**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 3:16-cr-00116** |
| | ) | **Judge Trauger** |
| | ) | |
| **BRANDON BRADFORD** | ) | |


## MEMORANDUM AND ORDER

Before the court is defendant Brandon Bradford's Motion for a New Trial under Rule 33 of the Federal Rules of Criminal Procedure. (Doc. No. 280.) The United States has filed a Response in opposition to the motion. (Doc. No. 299.) For the reasons set forth herein, the court will deny the motion.

## I.    Background

An Indictment charging Bradford and three co-defendants with conspiring to distribute 1,000 grams or more of heroin was returned on May 25, 2016. Two of the co-defendants had already been taken into custody, and the third was arrested on May 26, 2016. The defendant was not apprehended until August 17, 2017. All three co-defendants pleaded guilty. On November 2, 2018, after a four-day trial, a jury found defendant Bradford guilty of conspiring to distribute more than a kilogram of heroin. (Redacted Verdict Form, Doc. No. 276; Sealed Verdict Form, Doc. No. 277.) The defendant's Motion for a New Trial was filed on November 16, 2018, making it timely under Rule 33(b)(2).[1]

---

[1] Other than a short excerpt quoted herein, neither party has requested the preparation of the trial transcript. Therefore, the court has relied upon its memory and notes taken during the trial to rule on this motion.

In support of his motion, the defendant argues generally that justice requires the granting of a new trial in his case. More specifically, he contends that: (1) cooperating witness Larry Shelton's reference to Bradford's prior criminal history during his testimony was highly prejudicial and should have been excluded; (2) the probative value of Shelton's testimony that Bradford had made "vague threats" to testifying witnesses during trial was substantially outweighed by the prejudicial effect of that evidence (Doc. No. 280, at 5); (3) the government's "use of the Defendant's probation to show location and duration pertaining to the alleged conspiracy" was highly prejudicial, and whatever probative value the evidence had was outweighed by the prejudicial effect (*id.* at 3–4); (4) Bradford was prevented from conferring with counsel the night before the last day of the trial; (5) the government failed to provide *Jencks* material; (6) the cumulative effect of the purported errors requires a new trial; and (7) the evidence presented by the government was not sufficient to sustain the jury's verdict.

The government responds by providing a detailed summary of the evidence introduced at trial and refuting each of the defendant's arguments. The government argues that a new trial is not warranted and that the evidence presented at trial overwhelmingly established the defendant's guilt.

## II. Discussion

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Sixth Circuit construes Rule 33 to permit a new trial if a verdict is against the "manifest weight" of the evidence. *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (quoting *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007)). "Such a motion calls on the trial judge to take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure

there is not a miscarriage of justice." *Id.*

## A. References to the Defendant's Prior Criminal History

The defendant argues that evidence of his prior criminal history was introduced in violation of Rule 404(b) of the Federal Rules of Evidence and that the erroneous introduction of this evidence warrants a new trial under Rule 33.

Under Rule 404(b), "a court may admit evidence of a defendant's 'other' or 'similar' bad acts or crimes only if the evidence is probative of a relevant fact, and not to show the defendant's 'character' or 'propensity' to commit bad acts." *United States v. Ramer*, 883 F.3d 659, 669 (6th Cir.) (citations omitted), *cert. denied sub nom. Westine v. United States*, 139 S. Ct. 111 (2018). Relevant facts include "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "To admit evidence under Rule 404(b), the trial court must follow three steps: (1) make a preliminary determination that enough evidence exists that the prior act actually occurred; (2) determine whether the other acts evidence is being offered for a proper purpose under Rule 404(b); and (3) determine whether the other acts evidence is more prejudicial than probative under Federal Rule of Evidence 403." *Ramer*, 883 F.3d at 669 (citation omitted). Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 1. Evidence of a Prior Criminal Charge

Witness and co-conspirator Larry Shelton testified at length about his business relationship with Bradford and Bradford's role in the conspiracy to distribute heroin. The court generally found Shelton to be a very credible witness.

During cross-examination, defense counsel asked Shelton about his interview with the FBI and, in particular, his statement that the defendant "never touched the heroin himself." (Doc. No. 294, at 55.) In a lengthy and somewhat rambling response, Shelton mentioned in passing that the defendant already had a heroin charge. The relevant portion of the exchange went as follows:

Q. Do you remember telling [the FBI] that KC [a/k/a Bradford] never touched the heroin himself?

A. That's transporting the herron [sic]. When he bringing the herron from Chicago, from my understanding, he didn't touch it, but when he – but when he's making the delivery for the herron, he brings it himself in my hand in a backpack. Both times. Delivered it to me in my face, in my room with my door closed, just me and him talking about money. Me and him.

. . . .

Q. So when you said that KC never touched the heroin himself, only the money, you only meant driving back from Chicago?

A. Exactly.

Q. Why didn't you tell the FBI that it was only coming back from Chicago [that he wouldn't touch the heroin]?

A. I think I might have tell – I think I did say something to Agent Volk about it coming back from Chicago with – through his workers. But Joe [a/k/a Bradford], he smart. He's not gonna touch nothing. He's not gonna – he's not gonna be hands-on with delivering herron [sic] or trafficking herron on an interstate. *He's already got a herron charge.* He's not that stupid.

So he's gonna use some more people to use – he gonna use them as mules, his brother, and the Italian girl. He's gonna use them, use them up like he used everybody else up, including myself. And when it's time, and when it's over with, he just gonna sweep us under the rug. That's what we up here for.

(Doc. No. 294, at 55 (emphasis added).)

At the time that testimony was elicited, defense counsel requested a bench conference. Defense counsel stated that it had been agreed that the witnesses would not reference the defendant's criminal record and opined that Shelton's reference to another heroin charge

prejudiced the defendant. He also asserted that Juror No. 10 immediately reacted when Shelton referred to the defendant's already having a heroin charge.

The government confirmed that its witnesses had been instructed not to bring up the defendant's criminal history but argued that the fleeting reference was likely not even noticed by the jury, did not prejudice the defendant, and was not elicited by the government's questioning. Defense counsel requested that the court either declare a mistrial or, alternatively, excuse Juror #10.

The court observed that the reference to another heroin charge was so fleeting that it was not very noticeable and likely not prejudicial. The court therefore initially declined to grant either request. However, because alternates remained and in an abundance of caution, the court excused Juror #10 and substituted an alternate juror before the jury retired to deliberate. By doing so, the court granted one of the two alternative forms of relief sought by the defendant during trial, thus curing any possible prejudice.

Moreover, the statement to which Bradford objects was not introduced in violation of Rule 404(b)(1). First, it was not introduced by the government at all, much less for the purpose of suggesting that, because the defendant had sold heroin in the past, he had a propensity for selling heroin. The witness's point was simply that the defendant was too smart to get personally involved in the interstate transportation of the drugs. The defendant's claim that Shelton's statement "asserted an assumption that, because Mr. Bradford had a prior heroin charge, the defendant was the source of the substance that Mr. Shelton had purchased" (Doc. No. 280, at 2) grossly mischaracterizes the testimony. The reference was merely to a charge, not a conviction, and the witness provided no detail regarding the timing of the charge or its resolution.

Even if the statement could be considered to fall within the purview of Rule 404(b) and to

have been introduced for an improper purpose, it was not unduly prejudicial, falling, as it did, in the middle of a rambling narrative that was particularly damning for the defendant. That is, the actual substance of the response—explaining the witness's interactions with the defendant and the scope of the defendant's role in the conspiracy to distribute heroin—was highly probative of the defendant's guilt and likely had a much greater effect on the jury than one passing reference to the defendant's already having a heroin-related charge. This isolated reference, to which no particular attention was drawn, was not more prejudicial than probative under Rule 403 and does not warrant a new trial, particularly given that the court granted defense counsel's request to excuse the juror who was perceived to have had a visible reaction to the testimony in question.

### 2. The Defendant's Probationary Status

The defendant was on state probation during the timeframe of the heroin distribution conspiracy. The government sought to introduce certain records of the Tennessee Department of Correction compiled in connection with the defendant's state probation. The defendant argues that the government's use of his probation records violated Rule 404(b) and that, while the evidence had some probative value, it "was extremely prejudicial because it tended to establish that Mr. Bradford had a criminal predisposition." (Doc. No. 280, at 4.)

The government's position at trial was that the records were admissible as business records under Rule 803(6) of the Federal Rules of Evidence. At a jury-out hearing, defense counsel did not object to the admission of the records to establish two relevant issues—that the defendant had listed as his residence two addresses used by members of the conspiracy during the conspiracy and that false employment verification information furnished by a co-conspirator was contained on the forms. The records did not show the conviction for which the defendant was on probation. The court invited defense counsel to propose redactions to the proposed

exhibit (Collective Exhibit No. 9), but no redactions were requested, nor were there any further objections to the records.

The defendant has not shown that the evidence was admitted for the purpose of proving the defendant's character or propensity to act in accordance with such character. The records were admitted for the purpose of linking the defendant to the conspiracy and contained no information about the underlying state charge. Regardless, the evidence was substantially more probative than prejudicial and, therefore, did not violate Rule 403.

### 3. *The Cumulative Effect of the Evidence*

The defendant maintains that either reference to the defendant's prior bad acts warrants a new trial. In the alternative, he argues that the cumulative effect of both pieces of evidence worked cumulatively to adversely impact the jury, thus denying the defendant a fair trial. He argues that the jury could have reasonably inferred that the defendant was on probation for, and therefore had previously been convicted of, distributing heroin, making the charges against him in this case all the more plausible.

As set forth above, neither piece of evidence was introduced in violation of Rule 404(b). Even considered together, the evidence did not pose a serious risk of unfair prejudice or misleading the jury, in light of the overwhelming evidence of the defendant's guilt in this case.

### B. Evidence of the Defendant's Threats

Larry Shelton testified initially on the third day of trial, November 1, 2018. On November 2, 2018, the last day of trial, he was recalled by the government as a rebuttal witness. He testified to hearing the defendant threaten Shelton's brother, James Shelton, while they were being transported by the U.S. Marshals back to jail from court on October 31, 2018. The defendant argues that the court erred in admitting this testimony under Rule 404(b) and that the

probative value of the evidence was substantially outweighed by its prejudicial effect under Rule 403.

In particular, he contends that Shelton's recollection of the alleged threats was so "vague and general" that its credibility was suspect, thus further eroding any possible probative value. He also suggests that, because James Shelton, rather than Larry Shelton, was the target of the threats, Larry Shelton's testimony amounted to hearsay and should have been excluded. He also contends that, because the government called Larry Shelton rather than James Shelton, the defendant was deprived of the opportunity to cross-examine James Shelton about the defendant's statements. Finally, he claims that the government improperly used the recalling of Larry Shelton as an opportunity to hammer home the fact that the defendant was in custody, thus circumventing a prior limiting instruction given by the court.

None of these arguments holds any weight. First, the law in this circuit is clear that evidence of threats of the type to which Shelton testified is admissible under Rule 404(b) as spoliation evidence:

> Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction. . . . [T]hough not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to . . . threaten[] a witness, is admissible to show consciousness of guilt. . . . [S]poliation evidence regarding the defendant's threats to witnesses is admissible.

*United States v. Manns*, 277 F. App'x 551, 558 (6th Cir. 2008) (internal quotation marks and citations omitted). The evidence was factually credible; there were legitimate reasons to admit it, and its probative value was not substantially outweighed by its potentially prejudicial effect. *See id.*

Regarding the defendant's specific objections, Shelton's testimony was not vague or abstract but very specific, and Shelton made it clear that, although the threats were directed

toward his brother James, he himself heard them. The defendant was able to cross-examine Larry Shelton about the statements he heard, and the defendant was free to call James Shelton on rebuttal if he believed that James could have offered additional context for the statements at issue.

Finally, the revelation to the jury that the defendant was in custody during trial was not inherently prejudicial, and the defendant has not established actual prejudice arising from that disclosure. There is no evidence that any member of the jury witnessed the defendant in shackles or being transported by security. Even under these more prejudicial circumstances, the Sixth Circuit has repeatedly held that "[e]xposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so inherently prejudicial as to deny the defendant's constitutional right to a fair trial." *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (internal quotation marks and citation omitted). The Sixth Circuit has distinguished the situation of a defendant shackled in the courtroom during trial, which is inherently prejudicial, from that of a defendant "who has been observed in shackles for a brief period elsewhere in the courthouse." *Id.* Where the conditions under which a jury sees a defendant constitute "routine security measures rather than situations of unusual restraint such as shackling of defendants during trial," the defendants must show actual prejudice to be entitled to a mistrial. *Id.*; *see also Keys v. Booker*, 798 F.3d 442, 455 (6th Cir. 2015) (noting that the Sixth Circuit has long held that "a brief and fortuitous [viewing of the defendant in shackles] is not prejudicial and requires an affirmative showing of prejudice by the defendant" (citation omitted)).

Here, the jury did not actually witness the defendant in shackles or being transported by security and likely assumed that the defendant was in custody during trial. The defendant offers no legal support for a presumption of prejudice based on the mere reference to the fact that he

was in custody and has not established actual prejudice arising from that mention.

### C.    Consultation with Counsel

The defendant claims he was placed in solitary confinement the night before the last day of trial and, as a result, was "refused an opportunity to call his attorneys." (Doc. No. 280, at 8.) He claims that the decision whether to testify was "of grave importance," but he spent a cold, lonely night with little sleep before being called upon to make that decision. "As a result," he claims, "when the Defendant had discussions with his counsel regarding his desire to testify on his own behalf, the Defendant was unable to make a free and informed decision regarding his desire to testify." (*Id.*) Defense counsel claims they were unaware of the situation until after the trial concluded. Therefore, clearly, the defendant did not complain about the situation to his lawyers, nor did he appear to them to be impaired.

Notably, the defendant does not claim that he actually requested to contact his attorneys the night before the last day of trial, nor does he complain that he did not have ample time to consult with them during the last day of trial. He does not contend that he would have decided to testify, if he had been given more time to consider the question or if he had been less fatigued. As a result, the defendant cannot show that he was prejudiced by being relegated to solitary confinement the night before the last day of trial or that a new trial is warranted on this basis.

### D.    Jencks Material

The so-called Jencks Act, 18 U.S.C. § 3500, enacted in 1957 following the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657 (1957), generally provides that a defendant on trial in a federal criminal prosecution is entitled, for impeachment purposes, to the relevant and competent statements of a government witness in the possession of the government after the witness has testified on direct examination in the trial of the case. *See also* Fed. R. Crim.

P. 26.2 (incorporating the substance of the Jencks Act into the Federal Rules of Criminal Procedure). If a defendant establishes a violation of the Jencks Act, a new trial is not warranted unless the defendant was prejudiced by the error. *United States v. Susskind*, 4 F.3d 1400, 1401 (6th Cir. 1993).

The defendant contends that the government violated the Jencks Act by failing to provide "prior statements to law enforcement officers." (Doc. No. 280, at 9.) He claims that three witnesses, including Krystin Pape, testified at trial that "body packing" took place during trips to bring drugs back to Nashville from Chicago. However, in a pretrial statement, Pape "unequivocally told law enforcement officers that she never body packed any drugs during any of the trips to Chicago," which was contradicted by her trial testimony. (*Id.* at 8.) The defendant apparently did have access to one pretrial statement from Pape, but he speculates, based on the fact that all three witnesses were specifically asked by the prosecution about body packing during trial, and all denied it, that all three must have made "prior statements to law enforcement officers which would have indicated that they had body packed during the Chicago trips" that were never disclosed to defense counsel. (*Id.* at 9.)

The government responds that (1) it provided all witness statements it was required to produce under 18 U.S.C. § 3500 and Rule 26.2; (2) the defendant presents no actual evidence to the contrary; (3) the defendant did not, but could have, raised this issue at trial, thus foreclosing his ability to raise it now; and (4) witness statements about body packing were in the witness material provided to the defense, and the defendant had the opportunity to cross-examine any witnesses about perceived inconsistencies between prior statements and trial testimony and did in fact cross-examine Pape on this topic. The government also maintains that the issue of body packing on trips to Chicago is of relatively little importance in the context of the case as a whole

and in light of the overwhelming evidence of the defendant's involvement in a conspiracy to distribute heroin.

The court finds that the defendant has presented speculation and no evidence of the existence of Jencks Act material that the government failed to provide. Further, his motion suggests that he was in possession of a witness statement from Krystin Pape that allowed him to cross-examine her about the inconsistency between her prior statement and trial testimony. Further, even if the defendant had actual evidence of a Jencks Act violation, he has not shown substantial prejudice that would warrant a new trial.

### E.  The Cumulative Effect of Errors

Finding no error, the court rejects the defendant's contention that the cumulative effect of the purported errors requires a new trial.

### F.  Rule 29 Motion

Although he characterizes his motion as brought under Rule 33, the defendant also argues more generally that the evidence was not sufficient to support the verdict: "The government's case failed to stand up to even the barest of minimal standards and would barely qualify as reasonable suspicion, much less beyond a reasonable doubt." (Doc. No. 280, at 10.) To the extent the defendant "challenge[s] the sufficiency of the evidence," the court construes the motion as one for a judgment of acquittal under Rule 29. *See United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) ("A Rule 29 motion is a challenge to the sufficiency of the evidence." (quotation marks and citation omitted)).

For purposes of a Rule 29 motion, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 319 (1979); *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). "[T]his court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not remove every reasonable hypothesis except that of guilt." *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (internal quotation marks omitted). "This standard applies regardless whether direct or circumstantial evidence supports the conviction. In addition, [the] [c]ourt must draw reasonable inferences from the evidence in the government's favor." *United States v. Pollard*, 778 F.2d 1177, 1180 (6th Cir. 1985).

The proof in this case established that the defendant and his co-conspirators were obtaining large quantities of heroin on a frequent basis from the Chicago, Illinois area and transporting it to Nashville for redistribution. These trips began around September 2014 and continued through April 2016, when two of Bradford's co-defendants were arrested following a trip to Chicago to pick up heroin. Approximately 800 grams of heroin were recovered by law enforcement on that occasion. During the conspiracy, the amounts transported from the Chicago area for distribution in Nashville ranged from approximately 100 grams early on to kilogram quantities as the conspiracy progressed. As the operation grew, the defendant directed two of the co-conspirators to move from the Chicago area to Nashville to assist him in running the operation. The defendant and three co-conspirators initially resided at an apartment complex located at 270 Tampa Drive in Nashville and later, at the defendant's direction, moved to Stacy Drive, where they engaged in repackaging and then delivering heroin to customers in Nashville for the defendant. Other co-conspirators received the heroin for distribution. The defendant, as the leader of the operation, determined the pricing for the heroin and controlled the money. He also regularly picked up drug proceeds from the heroin sales from the Stacy Drive residence.

In sum, the evidence presented at trial was substantial, and it clearly and unmistakably

established the defendant's involvement in the conspiracy and his leadership role in it. That involvement was supported by the investigation conducted by law enforcement, multiple cooperating witnesses who largely corroborated each other's testimony, and physical evidence further supporting the witness testimony.

The evidence was clearly sufficient to support the verdict.

## III. Conclusion and Order

The Motion for a New Trial, which incorporates an alternative motion for judgment of acquittal, is **DENIED**.

It is so **ORDERED**.

ENTER this 25th day of February 2019.

ALETA A. TRAUGER
United States District Judge